MICHAEL L. TRACY, ESQ. (SBN 237779)
mtracy@michaeltracylaw.com
MEGAN ROSS HUTCHINS, ESQ. (SBN 227776)
mhutchins@michaeltracylaw.com
LAW OFFICES OF MICHAEL L. TRACY
2030 Main Street, Suite 1300
Irvine, CA  92614
T: (949) 260-9171
F: (866) 365-3051

Attorneys for Defendant
ENTERTAINMENT MEDIA SPECIALIST, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| STUDIO TRANSPORTATION DRIVERS, LOCAL #399 OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, ET AL<br><br>Plaintiffs,<br><br>vs.<br><br>HAPPY HOURS PRODUCTS, LLC, ET AL.<br><br>Defendants. | Case No.:SACV08-1117-JVS-AHx<br><br>**NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES**<br><br>Date: January 11, 2010<br>Time:  1:30 p.m. |

Please take notice that on January 11, 2010 at 1:30 p.m. or as soon thereafter as the parties may be heard, DEFENDANT ENTERTAINMENT MEDIA SPECIALIST, INC. ("EMS") will move this Court, at the United States Courthouse for the Central District of California, Western Division, for reasonable attorney's fees in the amount of $42,210.

The Notice of Appeal does NOT divest this Court of the right to hear this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on December 7th of 2009.

| | |
|---|---|
| Dated: December 14, 2009 | By: _____/S/_____<br>Michael Tracy, Attorney for<br>Entertainment Media Specialist, Inc. |

Table of Contents

**I. INTRODUCTION** ...............................................................................1

**II. FACTUAL AND PROCEDURAL BACKGROUND** ....................1

**III. ARGUMENT** ....................................................................................2

   A.   A REVIEW OF ALL THE FACTORS SHOWS THAT EMS' CONTRACTUAL RATE OF $300 PER HOUR IS THE REASONABLE RATE FOR THE SERVICES PERFORMED. .3

   B.   PLAINTIFFS' ATTORNEYS SPENT A REASONABLE AMOUNT OF TIME ON TASKS DIRECTLY RELATED TO THE CLAIMS. ..........................................................4

   C.   ATTORNEY'S FEES SHOULD BE AWARDED AGAINST ALL PLAINTIFFS, INCLUDING LOCAL #399, BECAUSE ALL CLAIMS WERE FOR UNPAID WAGES AND PENSION FUND CONTRIBUTIONS. ...............................................................5

   D.   THE ATTORNEY'S FEES SHOULD NOT BE REDUCED FOR ALLEGED INABILITY TO PAY BECAUSE THERE IS NO CASE LAW TO SUPPORT THIS FACTOR UNDER LABOR CODE SECTION 218.5, PLAINTIFFS SPECIFICALLY REQUESTED THAT RECIPROCAL ATTORNEY'S FEES APPLY, AND PLAINTIFFS HAVE ALREADY RECEIVED $17,500 FROM OTHER DEFENDANTS. .......................................................6

**IV. CONCLUSION** ................................................................................8

# **TABLE OF AUTHORITIES**

Page(s)

FEDERAL CASES

*Columbus Mills, Inc. v. Freeland*
   918 F.2d 1575 (11th Cir. Ga. 1990)..................................................................3

*Durrett v. Jenkins Brickyard, Inc.*
   678 F.2d 911 (11th Cir. Ga. 1982)....................................................................6

*Hensley v. Eckerhart*
   461 U.S. 424 (U.S. 1983)..................................................................................4

*Kerr v. Screen Extras Guild, Inc.*
   526 F.2d 67 (9th Cir. Cal. 1975)......................................................................3

*Vasquez v. Cargill*
   2008 U.S. Dist. LEXIS 19341 (C.D. Cal. Mar. 13, 2008).............................4

*Winterrowd v. Am. Gen. Annuity Ins. Co.*
   556 F.3d 815 (9th Cir. Cal. 2009).............................................................4, 5, 6

CALIFORNIA CASES

*Ketchum v. Moses*
   24 Cal. 4th 1122 (2001) ....................................................................................3

FEDERAL STATUTES

42 U.S.C. § 2000e-5(k)..........................................................................................7

CALIFORNIA STATUTES

Cal. Family Code § 270 .........................................................................................7

Cal. Lab. Code § 218.5 ................................................................................ passim

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction

When the Plaintiffs filed their complaint, they had the option of choosing reciprocal attorneys fees or allowing the case to proceed under the traditional rule that each side be responsible for their own fees. They specifically and deliberately chose reciprocal attorney's fees.

Now that they have lost, they seek to avoid the consequences of their decision by pleading poverty to this Court. However, the case law does not support mitigating attorney's fees against unsuccessful Plaintiffs when it is those same Plaintiffs that chose to allow reciprocal attorney's fees. In addition, Plaintiffs here have received $17,500 in settlement from other Defendants, so it is difficult to imagine why they should not be made to pay this money to the successful Defendant.

In computing the attorney's fees, Defendant EMS is simply ask that their contractual rate of $300/hr be paid for all hours reasonably incurred. EMS is not seeking a modification of their rate. As such, the total attorney's fees are $42,210.

## II. Factual and Procedural Background

Local #399 filed an initial complaint on October 7, 2008 alleging breach of contract and suing for unpaid wages on behalf of its members -- though the members were not parties to the lawsuit. In the Complaint, Local #399 specifically invoked Cal. Lab. Code § 218.5 in requesting attorney's fees (See Complaint for Breach of Collective Bargaining Agreement, Unpaid Wages, Additional Wages, and Injunctive Relief ¶49).

EMS then filed a motion to dismiss pursuant to Rule 12(b)(6) which was granted with leave to amend on February 23, 2009.

Local #399 filed a First Amended Complaint ("FAC") on March 16, 2009 (Document #29). The FAC joined in the individual employees as Plaintiffs and alleged the following causes of action: (1) Breach of the collective bargaining agreement, (2) Unpaid wages under California Labor Code, (3) Waiting time penalties for failure to pay wages upon termination, and (4)

Failure to provide an itemized paystub. In addition, all Plaintiffs requested that their reasonable attorney's fees be paid. (See FAC ¶59).

EMS filed a motion to dismiss the FAC, which was denied on May 4, 2009. EMS filed its answer and cross-claims on May 18, 2009. (Document #39).

Plaintiffs brought a motion for partial summary judgment, which was heard on November 9, 2009. The Court denied the motion for partial summary judgment and granted summary judgment in favor of Defendant EMS based on the fact that Plaintiffs could not show that EMS was their common law employer. (See Order Denying Motion For Summary Adjudication, Document #65 Filed 11/12/2009).

Judgment was entered December 1, 2009. (Document #68, 69).

Plaintiffs filed a notice of appeal on December 8, 2009 (Document #70). The notice of appeal does not affect this Court's jurisdiction to hear a motion for attorney's fees.

III.   Argument

The general rule that each party pay their own attorney's fees can be modified by contract or statute. In this case, there is a unique statute in that it gives the plaintiffs control over whether reciprocal attorney's fees will be applicable to the case. In particular, Cal. Lab. Code § 218.5 states that a court "shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." That is, had Plaintiffs not requested attorney's fees in their initiating papers, the traditional rule that each side pay their own fees would have been applicable. However, as Plaintiffs chose to request that their attorney's fees be paid if they were successful, it is now mandatory upon this Court to award "reasonable attorney's fees" to the successful Defendant.

In determining a "reasonable" fee, courts use the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of

the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. Cal. 1975).

The basic formula is to first determine a "lodestar" amount that represents a basic fee for comparable legal services in the community. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). For this analysis, EMS will show that their contractual $300/hr rate is reasonable and that the work performed was reasonable to achieve the results obtained. Although the case involved some interesting legal issues, it was not overly complex, and was disposed of relatively quickly. As such, EMS does not request any modification in the "lodestar" amount.

However, Plaintiffs are requesting that the "lodestar" amount be modified downward based on the Plaintiff's ability to pay. This is ironic because it is Plaintiffs that chose reciprocal attorney's fees. In addition, the only case law that considers the ability to pay in awarding attorney's fees is based on different statutes that gives the Court wide discretion in awarding attorney's fees. Not surprisingly, the applicable statute here does not give the party that chose to make attorney's fees applicable the ability to escape such fees simply by showing that they might have difficulty paying. In addition, Plaintiffs have already received a substantial amount of money in settlements from other Defendants, and it is only fair that they give that money to EMS, who was forced to litigate this lawsuit when it was clear to everyone involved that EMS was just acting as a payroll company and was not an "employer" that was liable for wages.

### A. A review of all the factors shows that EMS' contractual rate of $300 per hour is the reasonable rate for the services performed.

EMS contracted to pay their own attorney's fees of $300 per hour. (Decl. Tracy ¶2). This was a market rate transaction that is "highly persuasive" in determining the reasonable rate for services. *Columbus Mills, Inc. v. Freeland*, 918 F.2d 1575, 1580 (11th Cir. Ga. 1990).

A review of the other factors that would affect that attorney's reasonable rate all confirm that this rate is appropriate. For instance, while this case was not novel or complex, it was hardly a trivial matter and required knowledge of how movie productions function. In addition, Defendant's counsel has been awarded a similar rate a similar case. In particular, Judge Larson in this same District awarded Defendant's counsel a rate of $450/hr for a wage and hour case.

This was based on a "lodestar" rate of $300/hr as well as a 1.5x multiplier for exceptional results. (Decl. Tracy ¶4). As no multiplier is requested here, the $300/hr should be seen as reasonable.

It should be noted that "specialist" in the employment law context frequently are awarded much more than $300/hr. For instance, in *Vasquez v. Cargill*, 2008 U.S. Dist. LEXIS 19341 (C.D. Cal. Mar. 13, 2008), a general employment attorney was awarded a rate of $500 per hour and an ERISA specialist $525 per hour. Given these rates, there should be little dispute that the prevailing market rate for employment attorneys in this district is at least $300/hr.

### B. Plaintiffs' attorneys spent a reasonable amount of time on tasks directly related to the claims.

In computing the "lodestar," the Court must include all hours that are not "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (U.S. 1983). However, it is not permissible to reduce an attorney's fee award simply because a motion is not successful. (See *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. Cal. 2009), awarding fees for three (3) failed summary judgment motions.)

Here, there can be no question of EMS' ultimate success on all claims. The only issue is that EMS brought two motions that were not successful -- a motion to dismiss for failing to state a cause of action and a motion to disqualify Plaintiffs' counsel. Although unsuccessful, these motions were both critical to the litigation. For instance, the motion to dismiss set up the legal issues in an attempt to save EMS the costs of discovery. Although it was denied based on "facts" in the First Amended Complaint, once those "facts" were refined by discovery, the exact same legal argument was successful on summary judgment. Indeed, this Court noted "[a]lthough the evidence may ultimately be insufficient to hold EMS liable under the 'adoption by contract' theory or as a common law employer, perhaps on summary judgment, dismissal is improper at this time." (See Order or Defendant Entertainment Media Specialist Inc.'s Motion to Dismiss, Document #37, Filed 05/04/2009).

In addition, the motion to disqualify was directly relevant to precluding additional litigation against EMS. In this case, Plaintiffs had neglected to plead failure to reimburse business expenses under Cal. Lab. Code § 2802. (See Declaration of Michael Tracy in Support

of Motion to Disqualify, Document #41-2, ¶3, Filed 9/8/2009 and the Motion to Modify Scheduling Order, Document #49, Filex 9/28/2009).  It was not until after EMS had attempted to disqualify Plaintiffs' law firm for this and other reasons that Plaintiffs attempted to include their claim.

By forcing Plaintiffs to file their motion to amend the scheduling order in this lawsuit, EMS saved themselves substantial additional litigation because  Plaintiffs had stated that they intended to simply initiate a State court claim for the Labor Code § 2802 claims.  (See Plaintiffs' Reply in Support of Motion to Modify Scheduling Order, Document #60, Filed 11/02/2009 in which Plaintiffs state "[i]f amendment is not allowed, Plaintiffs will sue EMS in state court for the recovery of unreimbursed business [expenses.]" )  Thus, by forcing Plaintiffs to file the motion to amend and soundly defeating it, EMS greatly advanced their interest, even though they ultimately lost the motion which forced Plaintiffs to evaluate which claims their attorney had failed to plead on their behalf.

### C. Attorney's fees should be awarded against all Plaintiffs, including Local #399, because all claims were for unpaid wages and pension fund contributions.

There is no dispute that the individual Plaintiffs' claims are subject to reciprocal attorney's fees because all the individuals' claims specifically references Lab. Code § 218.5. However, the First Cause of Action is for a breach of contract and does not directly invoke Labor Code § 218.5. This should not change the result, because it is requesting that wages be paid pursuant to the contract. Specifically, the First Cause of Action states that "Local 399 in entitled to damages on behalf of its members to compensate those members for the wages they were entitled to be paid under the Black Book..." (FAC ¶52).  This is clearly a pleading for breach of contract to pay wages.  The attorney's fees for such a claim were addressed by the Ninth Circuit in Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815 (9th Cir. Cal. 2009).  In *Winterrowd*, the Court awarded attorney's fees for a "breach of a severance contract." *Id* at 817. In fact, after an initial appeal, the Ninth Circuit " remanded the case for further consideration of the

Winterrowd plaintiffs' breach of contract claims." *Id* at 818. Once the contract claims were resolved, a motion for attorney's fees was granted.

In terms of attorney's fees under Cal. Lab. Code § 218.5, the statute applies to "any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions." The First Amended Complaint specifically requests "wages" as well as "employee benefit fund contributions." (FAC ¶52). The FAC describes these "employee benefits funds" as contributions to the "Motion Picture Industry Health, Pension, and Individual Account Plans." (FAC ¶40). As such, it is clear that these are claims for health, welfare, or pension fund contributions and they were brought by Local #399 and not the individual Plaintiffs.

The statute is clear that reciprocal attorney's fees "shall" be awarded "if any party to the action requests attorney's fees and costs upon the initiation of the action." Cal. Lab. Code § 218.5. It is undisputed that the individual Plaintiffs requested attorney's fees and costs. (See FAC ¶59). In addition, it appears that all Plaintiffs requested attorney's fees in the Prayer for Relief, ¶ 5. As a result, attorney's fees should be awarded jointly against all Plaintiffs. It should also be noted that in their initial complaint, Local #399 did request attorney's fees under Labor Code § 218.5. (See Complaint for Breach of Collective Bargaining Agreement, Unpaid Wages, Additional Wages, and Injunctive Relief ¶49).

Because only Local #399 was a Plaintiff prior to the filing of the First Amended Complaint, the billing spreadsheet is broken out based on the that date. As such, the $4,830 that was incurred prior to the First Amended Complaint should be paid for exclusively by Local #399, while all fees after that date should be paid jointly by all Plaintiffs. (See Decl. Tracy ¶3, Exhibit A).

### D. The attorney's fees should not be reduced for alleged inability to pay because there is no case law to support this factor under Labor Code Section 218.5, Plaintiffs specifically requested that reciprocal attorney's fees apply, and Plaintiffs have already received $17,500 from other Defendants.

Plaintiffs main argument to reduce attorney's fees is the individual Plaintiffs' alleged inability to pay. At this point, EMS is not aware of how Plaintiffs intend to prove this, but it

should be noted that the only case law that allows a reduction for inability to pay is for an entirely different type of case with an entirely different statute for attorney's fees. The only line of cases allowing for this type of reduction is for claims under Title VII for discrimination. *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. Ga. 1982). However, the relevant statute applicable to those cases states that the Court, "in its discretion, may allow the prevailing party ... a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k).

The deliberate use of "may" and "in its discretion" is in stark contrast to the "shall" that is found in Cal. Lab. Code § 218.5. It should also be noted that if the California Legislature intended attorney's fees to be reduced by the ability to pay, they specifically would have stated so, just as they did in Cal. Family Code § 270 (which reads "If a court orders a party to pay attorney's fees or costs under this code, the court shall first determine that the party has or is reasonably likely to have the ability to pay."). From this, it is apparent that the California Legislature has already addressed the issue of when the ability to pay should be taken into account by the courts. They have allowed it in certain case, but not others. As such, there is no reason for this Court to take up the legislative pen and make new law as it relates to attorney's fees.

Even if there were a question of whether the Legislature was wrong in not including the ability to pay in consideration of attorney's fees is claims governed by Labor Code § 218.5, this is certainly not the case to draft such a law. Here, it is the Plaintiffs who specifically chose to make attorney's fees reciprocal. They had the right under Labor Code § 218.5 to not request attorney's fees and have each party pay their own fees. Indeed, the Legislature specifically gave them this right to determine whether the case was an attorney's fees case. This scheme allows Plaintiffs with strong cases to recover their attorney's fees, while Plaintiff's with weaker cases can simply choose not to plead the attorney's fees, and thus not be exposed to the risk.

Of course, Plaintiffs now want the best of both worlds and are proposing that this Court enforce a "heads I win, tails you lose" policy in which, had Plaintiffs been successful, they would be entitled to full attorney's fees, but upon losing, they own nothing because they can't pay.

Plaintiffs made their choice to invoke reciprocal attorney's fees, and now they need to be held to that choice.

Finally, although it is not clear what evidence Plaintiffs plan to introduce to prove that they do not have the ability to pay, it should be noted that they have already received a total of $17,500 from other Defendants as part of prior settlements. (See PLAINTIFFS' DECLARATION OF ROBERT A. CANTORE IN OPPOSITION TO MOTION TO DISQUALIFY GILBERT & SACKMAN AND FOR MONETARY SANCTIONS, Document #56-2, Filed 10/26/2009 ¶ 17-18, describing payments of $12,500 and $5,000 from prior settlements). It would simply be beyond belief that Plaintiffs could receive money from one Defendant and then tell this Court that they no longer have the money. Indeed, if simply spending money is the hallmark of the inability to pay, then it would be difficult to find a losing party that had diligently set aside money to be paid in the event of a loss.

Ultimately, if the Plaintiffs do not have the ability to pay, this is something that is better addressed by the bankruptcy court where all of their assets can be diligently examined and one creditor is not receiving preference over another. By making "ability to pay" a factor in attorney's fees for unpaid wages, this Court would turn attorney's fees motions into bankruptcy court proceedings, dragging in extensive information about how much money is owed to whom, how much money is being earned, and ultimately, which creditors should receive payment rather than Defendant. This is the purpose of a bankruptcy court and not appropriate in post-trial motions where discovery of much of this information is not possible.

## IV.   CONCLUSION

As a Defendant, EMS contracted to pay for their attorney at the market rate. Their attorney performed reasonable services and EMS is entitled to their attorney's fees under the law. Indeed, it was the Plaintiffs that invoked reciprocal attorney's fees in this case and now seek to avoid payment. Their argument that they do not have the ability to pay is not supported by the existing case law nor any facts that have or could have been produced during discovery. As such, Defendant EMS requests that attorney's fees be awarded jointly and severally against all Plaintiffs in the amount of $37,380 with an additional $4,830 awarded against Local #399.

Dated: December 15, 2009             By: _____/S/_____

                                     Michael Tracy, Attorney for
                                     Entertainment Media Specialist, Inc.